IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:16-CT-3240-FL

|  |  |  |
|---|---|---|
| WILLIAM DOMONIC BULLARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| DOMINIQUE PEPPERS, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion for summary judgment (DE 27), filed pursuant to Federal Rule of Civil Procedure 56. The motion was fully briefed and thus the issues raised are ripe for decision. For the reasons stated below, the motion is granted.

## STATEMENT OF THE CASE

On September 15, 2016, plaintiff, a state inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges defendant used excessive force against him in violation of the Eighth Amendment, and seeks compensatory and punitive damages, and a declaration that defendant violated plaintiff's Eighth Amendment rights. On February 27, 2017, the court conducted a frivolity review of plaintiff's complaint, and allowed the matter to proceed. Defendant filed answer on June 29, 2017, denying plaintiff's claim and asserting various affirmative defenses. On July 27, 2017, the court entered case management order governing discovery and dispositive motions practice. The parties completed discovery on or about December 5, 2017.

On April 3, 2018, defendant filed the instant motion for summary judgment. In support of the motion, defendant filed memorandum of law, statement of material facts, and appendix.

Defendant's appendix included affidavits from defendant and third-party witnesses Ricky Braswell, Mildred G. Prado, Carmeka Lee, Bret D. Murphy, and Christopher Wichtl; diagrams of the therapy room where the use of force incident took place; North Carolina Department of Public Safety ("DPS") policy and procedures governing the Maximum Control status and Use of Force; plaintiff's disciplinary history; records from disciplinary proceedings and incident reports related to the use of force incident; office of special investigations report, video recording of the incident; and plaintiff's medical and mental health treatment records for May 5 and May 6, 2016. On April 9, 2018, defendant filed amended memorandum of law, amended statement of material facts, and supplemental appendix to statement of material facts. Defendant's supplemental appendix provided supplemental affidavit of Ricky Braswell, which was not completed at the time defendant filed the instant motion, and the amended memorandum and amended statement of material facts incorporated the supplemental Braswell affidavit.

Plaintiff filed opposition to the instant motion on April 30, 2018. In support of his opposition, plaintiff filed memorandum of law, response to defendant's amended statement of material facts, and appendix. Plaintiff's appendix included affidavit from plaintiff, statement by third-party witness David Locklear, office of special investigations report, plaintiff's mental health records, and various witness statements submitted by DPS employees concerning the incident. Defendant filed reply in support of the instant motion on May 14, 2018.

## STATEMENT OF FACTS

The court recounts the facts in the light most favorable to plaintiff, except to the extent plaintiff's version of events is directly contradicted by the video evidence, authenticity of which has not been disputed. See Scott v. Harris, 550 U.S. 372, 380-81 (2007).

During the relevant time frame, plaintiff was serving a state term of imprisonment at Central

Prison located in Raleigh, North Carolina. (Def's Aff. (DE 29-1) ¶ 9). At some unidentified time before May 5, 2016, DPS designated plaintiff as Maximum Control status or "Mcon." (Id.) As of May 5, 2016, DPS policy stated an inmate shall be placed on Mcon status if he "has been found guilty of a major disciplinary infraction involving an aggravated assault, active or passive participation in riot or mutiny, or seizing or holding a hostage or in any manner unlawfully detaining any person against their will." (DPS Maximum Control Policy & Procedures § .0401(a) (DE 29-6)). Placement on Mcon status is reserved for the most violent and dangerous inmates in DPS custody, particularly those with a history of serious disciplinary infractions and inability to conform their behavior to DPS regulations. (Def's Aff. (DE 29-1) ¶¶ 10-13). As of May 5, 2016, plaintiff had incurred 75 disciplinary infractions, including disobeying orders, assault on staff by throwing liquids, threats to staff, lock tampering, possession of weapons and other contraband, self-injury, fire setting, and cell flooding. (Offender Pub. Info. (DE 29-8)). Plaintiff does not dispute that he committed the foregoing disciplinary offenses or that his placement on Mcon status was consistent with DPS policies and procedures.

On May 5, 2016, plaintiff attended a group therapy session held on the mental health unit. (Compl. (DE 1) § IV; Def's Aff. (DE 29-1) ¶ 24). Plaintiff and inmates Jefferies, Blackwell, and Locklear were placed in handcuffs and leg restraints, and the restraints were padlocked to the table and floor. (Extraction Room Video[1] (DE 29-13) at 1:41:33; Def's Aff (DE 29-1) ¶¶ 25-26). As shown on the video recording, the group therapy leader, Carmeka Lee ("Lee"), temporarily left the room, leaving plaintiff and the other inmates unsupervised. (Group Therapy Room Video (DE 29-

---

[1]The compact disc produced by defendant labels the relevant recordings as "244 - 2100 group therapy" and "Extraction Room - 2100 g." (DE 29-13). For ease of reference, citations to the video recordings in this order will be labeled "Group Therapy Room Video" or "Extraction Room Video."

13) at 1:41:55 - 1:42:42). At that time, plaintiff began manipulating his handcuffs, and successfully removed them. (Id. at 1:42:03 - :25). Plaintiff testified that he subsequently placed the handcuffs back on, fully locking them in place before Lee returned. (Pl's Resp. to Def.'s Statement of Material Facts (DE 37) ¶ 1). Lee then returned to the room, presumably continuing the therapy session.[2] (Group Therapy Room Video (DE 29-13) at 1:42:45).

A few minutes later, defendant entered the group therapy room, and began removing the padlocks from the restraints to escort the inmates out. (Id. at 1:44:47 - 1:47:30). Lee remained in the therapy room while defendant removed inmates Blackwell and Jefferies' handcuffs and leg restraints from the padlocks. (Id.) As defendant unshackled Jeffries, plaintiff made various comments directed toward defendant, including "[y]ou officers think y'all can do what y'all want." (Def's Aff. (DE 29-1) ¶ 34). After unshackling Jefferies, defendant told him to step over to the counter while defendant unshackled plaintiff and inmate Locklear. (Id.)

Defendant then began walking toward plaintiff. (Group Therapy Room Video (DE 29-13) at 1:47:28 - :34). At that time, Lee, Jefferies, and Locklear were still present in the room. (Id.) As defendant approached plaintiff, he observed that plaintiff had removed his handcuffs. (Def's Aff. (DE 29-1) ¶ 34; Group Therapy Room Video (DE 29-13) at 1:47:30 - :34). Plaintiff then stood up, lifted his unrestrained hands off the table, and clinched his left fist. (Group Therapy Room Video (DE 29-13) at 1:47:33 - :36). Plaintiff also can be seen yelling at defendant as defendant approached him. (Extraction Room Video (DE 29-13) at 1:47:33 - :36). Defendant then grabbed plaintiff by his left arm, maneuvered under it, placed his right arm around plaintiff's upper chest or neck area and left arm around his torso, and pulled him to the floor. (Group Therapy Room Video (DE 29-13)

---

[2]The video recording does not have sound.

at 1:47:36 - :38). When defendant made these initial contacts, plaintiff grabbed defendant's left arm and wrapped his right arm around it, thereby resisting defendant's efforts to restrain him. (Extraction Room Video (DE 29-13) at 1:47:35 - :37).

Plaintiff continued resisting defendant's efforts to restrain him after they fell to the floor. (Id. at 1:47:38 - :52). The video recording shows plaintiff actively squirming and rolling on the floor in an effort to escape defendant's hold. (Id.) Plaintiff testified that defendant struck him with a padlock shortly after they fell to the floor.[3] (Pl.'s Aff. (DE 38-1) at 2).[4] Defendant testified that plaintiff struck him with his right arm and grabbed at his face during the struggle, and plaintiff candidly admits that he "assaulted" defendant after they fell to the floor. (Def's Aff. (DE 29-1) ¶ 45; Pl.'s Aff. (DE 38-1) at 2).

As plaintiff emphasizes, the video recording shows defendant striking plaintiff twice with his fist after plaintiff "assaulted" defendant. (Extraction Room Video (DE 29-13) at 1:47:47 - :52). Plaintiff additionally alleges defendant struck him a third time with his fist, although the video recording does not clearly show a third punch. (Pl.'s Resp. to Def's Statement of Material Facts (DE 37) ¶ 15).[5] The second punch on the video occurs at a moment when plaintiff was not actively resisting, and after defendant briefly looked up and saw additional corrections staff entering the

_____

[3]Where such allegation is not directly contradicted by the video evidence, the court adopts it for purposes of ruling on the instant motion. Defendant denies striking plaintiff with a padlock, and multiple witnesses also testified that they did not see defendant strike plaintiff with a padlock. (Def's Aff. (DE 29-1) ¶ 46; Lee Aff. (DE 29-15) ¶¶ 17-18; Murphy Aff. (DE 29-16) ¶¶ 14-15; Wichtl Aff. (DE 29-17) ¶ 14). The video recording also does not show defendant raising his arm in a manner that suggests he is striking plaintiff with a padlock immediately after they fell to the floor. (Extraction Room Video (DE 29-13) at 1:47:37 - :47). As this portion of the altercation is somewhat difficult to see on the video recording, however, the court adopts plaintiff's version.

[4]Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

[5]Defendant also disputes that a third punch was thrown, but the court adopts plaintiff's version at this stage of the proceedings.

therapy room. (Extraction Room Video (DE 29-13) at 1:47:47 - :52). Following the second punch on the video, plaintiff grabbed defendant's leg attempting to re-engage with him as the other corrections officers attempted to separate them. (<u>Id.</u> at 1:47:52 - 1:48:02).

As a result of the altercation, plaintiff sustained a laceration to his head, which required sutures. (Pl's Aff. (DE 38-1) at 2).

## DISCUSSION

A.     Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading" but "must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 248-49; <u>see also</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). The nonmoving party thus "bears the burden of showing, by means of affidavits or other verified evidence, that [a] genuine dispute of material fact exists." <u>Bouchat v. Baltimore Ravens Football Club, Inc.</u>, 346 F.3d 514, 522 (4th Cir. 2003). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. <u>Anderson</u>, 477 U.S. at 250.

B.     Analysis

Defendant asserts he is entitled to qualified immunity to the extent plaintiff seeks monetary damages. Government officials are entitled to qualified immunity from civil damages so long as

"their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when 1) the plaintiff has not demonstrated a violation of a constitutional right, or 2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009). Here, the first inquiry is dispositive.

Plaintiff alleges defendants used excessive force against him in violation of the Eighth Amendment. The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" which constitutes cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312, 319 (1986), abrogated on other grounds by Wilkins v. Gaddy, 559 U.S. 34 (2010). The excessive force inquiry has an objective prong and a subjective prong. Under the objective prong, a plaintiff must establish that the forced used was "nontrivial." Wilkins, 559 U.S. at 39.

To satisfy the subjective component, a claimant must show that a prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991). For an excessive force claim, the relevant state of mind is "wantonness in the infliction of pain." Whitley, 475 U.S. at 322. Although "[a]n express intent to inflict unnecessary pain is not required" to establish an excessive force claim under the Eighth Amendment, an inmate must show that the defendant inflicted unnecessary and wanton pain and suffering. Id. at 319. In determining whether a prison official has acted with "wantonness," relevant factors include: 1) the need for application of force; 2) the relationship between the need and the amount of force used; 3) the threat reasonably perceived by the responsible officials; and 4) any efforts made to temper the severity of a forceful response. Whitley, 475 U.S. at 321; Hudson, 503 U.S. at 7.

Plaintiff alleges defendant used excessive force when he pulled plaintiff to the floor and

struck him four times, once allegedly with a padlock in his hand. In view of the circumstances, particularly the grave risk plaintiff posed to corrections staff and other inmates, the court concludes the use of force was not excessive.

Plaintiff has been convicted of numerous disciplinary offenses, including multiple assaults on staff, setting fires, self-injury, and threatening staff. (Offender Pub. Info. (DE 29-8)). Based on his disciplinary history, DPS officials placed plaintiff on Mcon status, which is reserved for the most dangerous inmates. (Def.'s Aff. (DE 29-1) ¶¶ 9-13). DPS thus requires plaintiff to be placed in leg and wrist restraints, and shackled to the table when he attends group therapy sessions. (Id. ¶ 26).

On May 5, 2016, defendant entered the group therapy room to remove the padlocks securing the inmates to their tables and the floor, and escort them back to their cells. (Group Therapy Room Video (DE 29-13) at 1:44:47 - 1:47:30). As defendant was unshackling other inmates, plaintiff made various comments directed to defendant, including "[y]ou officers think y'all can do what y'all want." (Def's Aff. (DE 29-1) ¶ 34). Plaintiff then began tampering with his handcuffs, and successfully removed them. (Group Therapy Room Video (DE 29-13) at 1:47:30 - :34). When defendant started walking toward plaintiff to unshackle him, he noticed plaintiff had removed his handcuffs without permission. (Def.'s Aff. (DE 29-1) ¶ 34).

At that time, defendant reasonably feared plaintiff was planning another assault on staff or the other inmates, given his extensive documented history of committing such assaults and removal of his handcuffs without permission. Moreover, defendant was likewise concerned that plaintiff may have unlocked his leg restraints or inmate Locklear's restraints.[6]

---

[6]Plaintiff argues defendant could clearly see that the he had not unlocked his leg restraints, but the video evidence demonstrates that plaintiff could have unlocked the leg restraints and then placed them back over his legs in a manner suggesting he was still retrained. (See Group Therapy Room Video (DE 29-13) at 1:41:58 - 1:42:31 (showing plaintiff removing his handcuffs and then placing them back over his wrists)). Thus, even assuming defendant could have seen the leg restraints on plaintiff's ankles, defendant could not know with certainty that plaintiff had not unlocked

As defendant approached, plaintiff stood up, lifted his unrestrained hands off the table, and clinched his left fist. (Group Therapy Room Video (DE 29-13) at 1:47:33 - :37). Plaintiff was also yelling at defendant as he approached. (Extraction Room Video (DE 29-13) at 1:47:33 - :36). In these circumstances, defendant justifiably believed significant force was necessary to minimize the threat that plaintiff may attack defendant, the other inmates, or Lee, a civilian instructor who did not have extensive training in self-defense.

Turning to the Whitley factors, plaintiff posed a significant risk to defendant and others in the group therapy room, for the reasons stated above, and thus there was ample need for application of force. Whitley, 475 U.S. at 321. Defendant also reasonably perceived plaintiff posed a grave risk to both himself and others.[7] Id.

Plaintiff primarily disputes the second and fourth Whitley factors, suggesting that while defendant may have been justified in using some force, such as pepper spray, the incident did not justify pulling plaintiff to the floor and striking him four times, once with a padlock. The court disagrees. As set forth above, defendant had mere seconds to decide the amount of force necessary to prevent plaintiff from attacking others or harming himself. The court will not second guess defendant's decision to forcibly restrain plaintiff instead of deploying pepper spray in these circumstances. See, e.g., Graham v. Connor, 490 U.S. 386, 396-97 (1989) (explaining that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation" and courts must take that circumstance into account when considering whether a constitutional violation

them in addition to the handcuffs.

[7] Notably, plaintiff's disciplinary offenses include convictions for self-injury. (Offender Pub. Info. (DE 29-8).

occurred); Grayson v. Peed, 195 F.3d 692, 696 (4th Cir. 1999) ("In dealing with such agitated detainees prison officials must not be forced to walk a tightrope and face the prospect of a lawsuit [for either excessive force or failing to protect an inmate from harming himself] no matter which way they turn").

As to plaintiff's allegations that defendant struck him three times with his fist and once with a padlock while they struggled on the floor, plaintiff fails to account for his own behavior after defendant pulled him to the floor. As noted, plaintiff alleges defendant struck him with the padlock shortly after they fell to the floor. The video recording shows plaintiff resisted defendant's initial efforts to restrain him and continued to struggle with defendant immediately after he pulled him to the floor. (Extraction Room Video (DE 29-13) at 1:47:35 - :43). Plaintiff could have grabbed a number of items from defendant's uniform during the struggle that may have been used as weapons,[8] and significantly injured (or even killed) defendant or others with such weapons. Thus, the strike with the padlock was a proportionate response to plaintiff's continued resistance.

Plaintiff also admits that he "assaulted" defendant after defendant struck him with the padlock. (Pl.'s Aff. (DE 38-1) at 2). And the video demonstrates plaintiff continued to struggle with defendant in the moments leading up to the punches. (Extraction Room Video (DE 29-13) at 1:47:39 - :52).

Defendant's punches and the strike with the padlock therefore were "a good faith effort to maintain and restore discipline" and not excessive force. Whitley, 475 U.S. at 320-21; Grayson, 195 F.3d at 694, 696 (holding officers did not violate Eight Amendment when five-man cell extraction

---

[8]The video recording shows defendant had keys in his hand as he approached plaintiff, and all parties agree defendant had padlocks in either his hands or his pockets immediately before the altercation. (See Group Therapy Room Video (DE 29-13) at 1:47:29 - :36; Pl.'s Aff. (DE 38-1) at 2; Def.'s Aff. (DE 29-1) ¶ 44).

team pinned plaintiff down and punched plaintiff seven to nine times "during the course of the struggle" where inmate posed immediate threat to officer safety).    While plaintiff momentarily stopped resisting just before the second punch shown on the video, the court cannot say that use of force was excessive under the circumstances.    Defendant reasonably perceived that plaintiff continued to pose a threat at that time, especially in light of his admitted assault on defendant just seconds before.    See Grayson, 195 F.3d at 696-97 ("If we failed to accord due deference to the officers' efforts [to restrain a combative prisoner], we would give encouragement to insubordination in an environment that is already volatile enough.")

Having reviewed and fully considered plaintiff's version of events and undisputed video evidence in light of the applicable legal standard, the court concludes plaintiff cannot establish defendant committed an Eighth Amendment violation.    Accordingly, defendant is entitled to qualified immunity.[9]

## CONCLUSION

Based on the foregoing, the court GRANTS defendant's motion for summary judgment (DE 27) and DISMISSES plaintiff's claims with prejudice.    The clerk is DIRECTED to close this case.

SO ORDERED, this the 21st day of February, 2019.


LOUISE W. FLANAGAN
United States District Judge

---

[9]Plaintiff also is not entitled to injunctive or declaratory relief because he has not established a violation of his constitutional rights.